UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND


<u>Mary Seguin</u>

   v.        Civil No. 12-cv-614-JD

<u>Haiganush R. Bedrosian, Chief</u>
<u>Judge of the Family Court of</u>
<u>Rhode Island, et al.</u>


<u>O R D E R</u>

  Mary Seguin brought suit against Rhode Island Family Court
judges and Rhode Island state officials, alleging claims under 42
U.S.C. § 1983, federal criminal statutes, and state law, arising
out of a series of orders issued in cases relating to custody
proceedings involving Seguin.  Seguin filed a motion for a
preliminary injunction, which was referred to Magistrate Judge
Landya B. McCafferty.  The magistrate issued a Report and
Recommendation concluding that the motion should be denied.
Seguin objected to the magistrate's recommendation and moved to
vacate reference of the motion to the magistrate.  The defendants
objected to the motion to vacate reference to the magistrate, and
also moved to dismiss Seguin's amended complaint and to strike
the subsequent amended complaints.  Seguin objected to the
defendants' motions.

<u>Background</u>

This case arises out of child custody proceedings in the Rhode Island Family Court ("Family Court") involving Seguin and her children, including proceedings instituted by Gero Meyersiek, the father of one of Seguin's daughters, naming Seguin as the respondent.  <u>See</u> <u>Meyersiek v. Seguin</u>, No. K01-0521M (R.I. Fam. Ct., Kent Cnty.).  Divorce and child custody proceedings between Seguin and her ex-husband, Marc Seguin, are also pending in the Family Court.  <u>See</u> <u>Seguin v. Seguin</u>, No. K01-10503 (R.I. Fam. Ct., Kent Cnty.).  Both of these proceedings are at issue in this case.

Judge Michael Forte of the Family Court granted Meyersiek sole temporary custody of his daughter in an order granting a motion for emergency relief dated January 11, 2010.  Thereafter, the Family Court issued a series of orders, in both the <u>Meyersiek</u> and <u>Seguin</u> proceedings, concerning custody, support, and visitation issues.  Seguin asserts that the Family Court's orders were generally issued in her absence, without notice, without findings, and without a stenographic record prepared, and were intended to retaliate against Seguin for filing reports with federal authorities regarding misconduct in her Family Court proceedings.  Seguin has been, at times, represented by counsel

2

in the Family Court proceedings, and counsel has filed objections to certain of the Family Court's orders on Seguin's behalf.

On June 22, 2010, in the child custody proceedings that followed the Seguins' divorce, Judge Stephen Capineri issued an order, which limited Seguin's visitation rights and rights to communicate with her daughter, while granting Marc Seguin temporary sole custody and physical possession of their daughter. Seguin, through counsel, filed a petition for a writ of certiorari in the Rhode Island Supreme Court ("Supreme Court") challenging the June 22, 2010, order.  In the certiorari petition, Seguin asserted that the Family Court in the Meyersiek proceedings issued a similar order on January 11, 2010, in response to an emergency motion that Seguin's counsel characterized as an abuse of process.  The Supreme Court denied Seguin's petition for a writ of certiorari on September 9, 2010. See Seguin v. Seguin, No. SU-2010-22-M.P. (R.I. Sept. 9, 2010) (Ex. G to Defs.' Mot. to Dismiss Am. Comp. (document no. 62-20)).

After reading news reports about unrelated litigation filed in Rhode Island regarding truancy cases allegedly mishandled by the Family Court, Seguin filed a report with the United States Justice Department regarding those truancy cases in December 2010, and also provided federal authorities with information regarding her child custody proceedings.  Then, on December 14,

3

2010, Judge Capineri recused himself from the child custody proceedings involving Marc Seguin and from the Meyersiek proceedings.

After Judge Capineri recused himself, Chief Family Court Judge Haiganush Bedrosian presided over the Meyersiek proceedings.  Judge Bedrosian issued a series of restraining orders against Seguin, from January 7, 2011, through March 29, 2011, in a related Family Court proceeding in Providence County. See Meyersiek v. Seguin, No. P11-0026A (R.I. Fam. Ct., Providence Cnty.).  On March 29, 2011, all of the Meyersiek proceedings were reassigned from Judge Bedrosian to Judge John McCann.  Seguin alleges that Judge Bedrosian recused herself at that time because of the pending Justice Department investigation and that Judge Bedrosian instructed Judge McCann to continue to issue retaliatory orders against Seguin.  The Meyersiek proceeding remains pending in the Kent County Family Court before Judge McCann.

Seguin filed a complaint in the Rhode Island Superior Court ("Superior Court") against the judges involved in the custody proceedings alleging, among other things, that the various orders interfered with Seguin's parental rights and right to travel, that the judges who issued the orders were biased, that the orders were retaliation for the misconduct reports she filed with

4

the United States Justice Department, that the Family Court
proceedings violated state laws requiring that all proceedings be
transcribed or recorded, and that she was deprived of due process
of law.  See Seguin v. Bedrosian, No. 2012-0124 (R.I. Super. Ct.,
Providence Cnty.).  In August 2012, following a hearing, the
Superior Court dismissed the complaint, finding that: (1) the
Superior Court lacked authority to review Family Court orders;
(2) Seguin's claims asserting violations of federal criminal laws
were not based on viable private causes of action; and (3) the
Family Court judges were absolutely immune from suit.  See id.
(Aug. 4, 2012).  Judgment was entered on October 4, 2012, and
Seguin does not appear to have appealed the dismissal of her
Superior Court action to the Supreme Court.  Instead, shortly
after obtaining the adverse Superior Court decision, but before
judgment was entered, Seguin filed the complaint in this action.

Seguin's complaint in this action asserts essentially the
same claims as were asserted in the Superior Court action.  Her
claims are based on alleged constitutional violations, federal
criminal statutes, and Rhode Island state law.  Seguin seeks
injunctive and declaratory relief as to the judicial defendants
and other Rhode Island state official defendants, including Peter
Kilmartin, the Attorney General of Rhode Island, whom Seguin

suggests were complicit in the judicial defendants' illegal
activity.  Seguin also seeks monetary damages from Kilmartin.

Discussion

Seguin filed a motion for a preliminary injunction, seeking
to enjoin the defendants from presiding over her child custody
proceedings, to prohibit the defendants from enforcing or issuing
orders, and to declare void prior Family Court orders issued in
the child support proceedings.  The court referred the motion to
the magistrate, who issued a report and recommendation ("R&R")
concluding that Seguin's motion should be denied.  Seguin
objected to the R&R and also moved to vacate the order referring
the motion to the magistrate.

After the magistrate issued the R&R, Seguin filed an amended
complaint and, subsequently, three additional amended complaints.
The defendants have moved to dismiss Seguin's first amended
complaint and to strike the subsequent amended complaints.

I.   Motion to Vacate Referral Order and Objection to R&R

On October 24, 2012, the magistrate issued an R&R concluding
that Seguin's motion for a preliminary injunction should be
denied based on Younger abstention.  See Younger v. Harris, 401
U.S. 37 (1971).  Seguin filed a timely objection to the R&R and,

6

in the same filing, moved to vacate the reference of the motion
to the magistrate.[1]  The defendants argue that reference of the
motion to the magistrate was proper and that the magistrate
correctly found that <u>Younger</u> abstention applies.


    A.   <u>Motion to Vacate Reference</u>

In support of her motion to vacate reference of the motion
for a preliminary injunction to the magistrate, Seguin argues
that the magistrate is biased because the R&R did not address
Seguin's allegations of racial and gender discrimination in the
underlying state proceedings.  Seguin contends that there is no
plausible explanation for the magistrate's failure to discuss
those allegations other than that the magistrate is biased, and
that her bias deprived Seguin of due process.

28 U.S.C. § 636(c)(4) provides: "[t]he court may . . . under
extraordinary circumstances shown by any party, vacate a
reference of a civil matter to a magistrate judge under this
subsection."  <u>See also</u> Fed. R. Civ. P. 73(b)(3).  "The

---

[1]Seguin submitted her filing containing both the objection
to the R&R and the motion to vacate reference to the magistrate
twice (document nos. 35 and 36).  Although the two documents
appear to be identical, the first is docketed as Seguin's
objection, and the second is docketed as Seguin's motion to
vacate.  Seguin subsequently filed a second motion to vacate the
reference to the magistrate (document no. 60), which repeats a
portion of her earlier filings.

'extraordinary circumstances' standard is difficult to satisfy."
Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 2011
WL 70593, at *3 (S.D.N.Y. Jan. 10, 2011).  "Although
'extraordinary circumstances' remain somewhat undefined, courts
are clear that unfounded accusations of bias and empty charges of
impartiality cannot fall within the definition."  McGrath v.
Everest Nat. Ins. Co., 2009 WL 4842837, at *9 (N.D. Ind. Dec. 10,
2009) (citing Manion v. Am. Airlines, Inc., 251 F. Supp. 2d 171,
173 (D.D.C. 2003)); see also Gleis v. Buehler, 2012 WL 1379323,
at *2 (D. Conn. Apr. 20, 2012) ("judges do not vacate referrals
whenever bias is alleged but instead require the movant to point
to facts satisfying the statute's standard of extraordinary
circumstances").  Further, "[b]ecause issues regarding a judge's
impartiality must generally arise from 'extrajudicial' factors,
'judicial rulings alone almost never constitute a valid basis for
a bias or partiality motion.'"  M&I Marshall & Ilsley Bank v.
McGill, 2011 WL 2464184, at *1 (D. Ariz. June 21, 2011) (quoting
Liteky v. United States, 510 U.S. 540, 554 (1994)).

    Seguin argues that extraordinary circumstances exist because
the magistrate is biased, as evidenced by the R&R's failure to
cite to the phrase "because the grandmother does not speak
English," which Seguin alleges was the basis for the Family

Court's orders depriving her of her custodial rights.[2]   Seguin

also alleges bias based on the magistrate's failure to cite

Seguin's allegations of gender discrimination, which appear to be

predicated on the existence of custody orders issued against her

while she was, as she describes herself, "a pregnant Texas woman

on the verge of giving birth."

Seguin's charges of bias do not meet the definition of

extraordinary circumstances.[3]   See, e.g., Moses v. Sterling

Commerce (Am.), Inc., 122 Fed. Appx. 177, 182 (6th Cir. 2005)

("These conclusory allegations [of prejudice and bias]

demonstrate a distaste for how this case was being resolved by

the magistrate judge.   A motion to vacate the reference cannot

stand on these grounds.").   Case law is clear that "[a]

magistrate judge's purported 'bias,' as allegedly manifested

through his or her rulings, does not meet the 'extraordinary

circumstances' standard."   Zerega Ave., 2011 WL 70593, at *3; see

---

[2]The actual quote, which is included in the "emergency
motion for ex parte relief" filed by Meyersiek, appears to be
that Seguin left her children "with the maternal grandmother who
does not speak English."   Seguin infers that because this
allegation was included in the motions for custodial relief, the
Family Court granted the motions "because the grandmother does
not speak English."

[3]The magistrate discussed Seguin's allegations of "biased
judges and invalid procedures," but did not mention the specific
allegations about which Seguin complains.

also Manion, 251 F. Supp. 2d at 174-75; Doe v. Nat'l Bd. of Med.
Exam'rs, 2001 WL 1003206, at *4 (E.D. Pa. Aug. 14, 2001); Frank
v. County of Hudson, 962 F. Supp. 41, 44 (D.N.J. 1997); Clay v.
Brown, Hopkins & Stambaugh, 892 F. Supp. 11, 12-13 (D.D.C. 1995).

Accordingly, Seguin's motions to vacate the reference to the
magistrate do not demonstrate extraordinary circumstances and are
therefore denied.

B.   The Magistrate's R&R

The magistrate recommended denial of Seguin's motion for a
preliminary injunction based on the application of the Younger
abstention doctrine.  In her objection to the R&R, Seguin argues
that Younger abstention does not apply because her case presents
extraordinary circumstances, including extreme bias and immediate
irreparable harm, and further suggests that bias in the Supreme
Court prevents her from pursuing her claims in state court.[4]

---

[4]A district court is not bound to accept the magistrate
judge's recommendations on the disposition of any pretrial
matter.  See 28 U.S.C. § 636(b)(1).  Thus, a district court "may
accept, reject, or modify, in whole or in part, . . . the
recommendations made by the magistrate judge."  Id.; see also
United States v. Raddatz, 447 U.S. 667, 676 (1980) (district
court has broad discretion to review recommendations of
magistrate judge).

1.   <u>Younger factors</u>

The <u>Younger</u> abstention doctrine specifically requires federal courts to abstain from exercising jurisdiction when the plaintiff in the federal case is seeking to enjoin ongoing state proceedings.  <u>See</u> <u>Younger</u>, 401 U.S. at 43-44.  As interpreted, <u>Younger</u> abstention establishes "a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation."  <u>Maymo-Melendez v. Alvarez-Ramirez</u>, 364 F.3d 27, 31 (1st Cir. 2004).  <u>Younger</u> abstention is therefore "appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal [claim]."  <u>Rossi v. Gemma</u>, 489 F.3d 26, 34-35 (1st Cir. 2007); <u>see also</u> <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 431-32 (1982).

With regard to the first factor, Seguin seeks to enjoin ongoing Family Court proceedings concerning the custody of her children, to declare orders issued in those proceedings void, to declare illegal and/or unconstitutional the procedures employed in those proceedings, and to enjoin the Family Court from enforcing its orders.  The relief Seguin seeks would interfere

extensively with the ongoing judicial Family Court proceedings. See Montgomery v. Montgomery, 764 F. Supp. 2d 328, 333 (D.N.H. 2011) ("[a] federal-court proceeding 'interferes' with a state-court proceeding for Younger purposes when it either 'enjoins the state proceeding or has the practical effect of doing so'") (quoting Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 70 (1st Cir. 2005)). As for the second factor, the state has a strong interest in the issues presented in the Family Court cases, including child custody issues and the procedures employed in Family Court. See Colassi v. Looper, 2008 WL 2115160, at *2-*3 (D.N.H. May 20, 2007) (state has strong interest in child custody issues, including orders affecting custodial parent's ability to relocate out of state (citing Moore v. Sims, 442 U.S. 415, 422-23 (1979) and Malachowski v. City of Keene, 787 F.2d 704, 708-09 (1st Cir. 1986))); see also Mann v. Conlin, 22 F.3d 100, 106 (6th Cir. 1994).

As for the third factor, whether the state judicial proceeding provides an adequate opportunity for Seguin to advance her claims, Seguin has not "demonstrate[d] that 'state procedural law barred [the] presentation of'" those claims. Murphy v. City of Manchester, 70 F. Supp. 2d 62, 69 (D.N.H. 1999) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987)). Although Seguin implies that she does not have the opportunity to present

her claims because the Supreme Court denied her petition for a writ of certiorari to review an order issued in the divorce/child custody proceeding, that denial does not render the appellate process "inadequate" for the purposes of excepting this case from application of the Younger abstention doctrine.  See Parent v. New York, 2012 WL 2213658, at *2 (2d Cir. June 18, 2012) ("simply because the state courts have not issued decisions in [the plaintiff's] favor does not render them 'inadequate' for purposes of Younger abstention"); see also Huffman v. Pursue, Ltd., 420 U.S. 592, 610 (1975).  To the extent Seguin suggests that the denial of her petition was because of the Supreme Court's bias against her, and thus she cannot bring her claims in state court, the third Younger factor focuses only on whether any procedural impediments exist.[5]  See Hansel v. Town Ct., 56 F.3d 391, 394 (2d Cir. 1995) ("So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for Younger purposes.").

Seguin does not argue that Rhode Island law bars her from raising her claims in the Family Court proceedings or in the

---

[5]Seguin's allegations of bias in the Supreme Court are discussed further in the following section concerning exceptions to Younger abstention.

Supreme Court.[6]  "Absent some clear reason to think otherwise, the court must and does assume that state procedures will afford an adequate remedy."  McKenna v. DeSisto, 2012 WL 4486268, at *4 (D.R.I. Sept. 27, 2012) (internal quotations marks and citation omitted); see also Pennzoil, 481 U.S. at 15.  Therefore, the third Younger factor pertains to this case.

### 2.   Younger exceptions

Seguin argues that even if the three Younger factors are met, her case presents extraordinary circumstances requiring the court to intervene in the state proceedings.  Specifically, Seguin argues that the Family Court proceedings have been brought in bad faith and are motivated by, among other things, ethnic and racial bias, and retaliatory animus because she reported issues concerning the truancy cases and the Family Court proceedings to federal authorities.

When the three Younger criteria are satisfied, abstention is required absent "exceptional circumstances," which may include a situation where "irreparable injury is both great and immediate .

---

[6]Although Seguin filed a petition for a writ of certiorari to review an order issued in the divorce/child custody proceeding, Seguin chose not to appeal the Superior Court order dismissing her case in which she brought constitutional claims similar to this action, despite that avenue being available.  See R.I. Gen. Laws. §§ 8-1-2 & 14-1-52.

. . or where there is a showing of bad faith [or] harassment."
Mitchum v. Foster, 407 U.S. 225, 230 (1972) (internal quotation
marks and citations omitted).  Extraordinary circumstances are
also present in "cases in which extreme bias completely renders a
state adjudicator incompetent."  Esso Standard Oil Co. v. López-
Freytes, 522 F.3d 136, 143 (1st Cir. 2008).  The "exceptions to
Younger's policy of abstention have been very narrowly construed
by the Court."  Bettencourt v. Bd. of Registration in Med. of
Commonwealth of Mass., 904 F.2d 772, 779 (1st Cir. 1990)
(internal quotation marks and citation omitted).  It is the
plaintiff's burden to "make sufficient specific factual
allegations which support an inference that the particular
exception applies and [she] cannot rely on general claims of
misconduct."  Kennedy v. Town of Billerica, 594 F Supp. 2d 117,
124-25 (D. Mass. 2009) (internal quotation marks and citation
omitted).

Seguin argues that each of the judges of the Family Court is
biased against her because they issued various orders against her
in the custody proceedings.  Specifically, as discussed above,
she alleges that ex-parte custody orders were issued because of
allegations that her mother does not speak English, which
suggests racial and ethnic bias, and that the Family Court did
not terminate a domestic violence proceeding against her while

15

she was "a pregnant Texas woman on the verge of giving birth," which suggests gender bias and discrimination.

Although Seguin cites various orders which were decided in her adversaries' favor and the recusal of several Family Court judges in her proceedings, "[t]he presumption of judicial impartiality cannot be trumped by free-floating invective, unanchored to specific facts." Brooks v. N.H. Supreme Court, 80 F.3d 633, 640 (1st Cir. 1996) ("Judicial bias is a recognized basis for derailing Younger abstention, but the claim requires more than the frenzied brandishing of a cardboard sword."); see also Gibson v. Berryhill, 411 U.S. 564, 577-79 (1973).  Seguin's accusations and unfounded assumptions are not enough.  Therefore, Seguin has not sufficiently alleged that the Family Court judges are biased against her.

To the extent Seguin implies that the Supreme Court necessarily endorses the Family Court's alleged bias and, therefore, is unable to impartially review her claims against the defendant judges, that argument is similarly unavailing.  "[A]n entire group of adjudicators cannot be disqualified wholesale solely on the basis of an alleged institutional bias in favor of a rule or policy promulgated by that group." Brooks, 80 F.3d at 640 (citing Doolin Sec. Savs. Bank v. FDIC, 53 F.3d 1395, 1407 (4th Cir. 1995)).

Nor has Seguin adequately alleged that the Family Court proceedings were brought in bad faith or that she would suffer irreparable harm from abstention.  "'[B]ad faith' in [the Younger] context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Kugler v. Helfant, 421 U.S. 117, 126 n.6 (1975). Here, the custody proceedings were instituted by Seguin's ex-husbands, not the Family Court or the defendant judges.[7]

Regardless, Seguin's allegations of bad faith, which are predicated on conclusory assertions that the various orders issued against her in the Family Court proceedings were motivated by either racial, ethnic, or gender bias, retaliatory animus, or were issued to cover up an elaborate Racketeer Influenced and Corrupt Organization ("RICO") enterprise are insufficient to demonstrate bad faith.[7] See Douglas v. N.H. Supreme Court Prof.

---

[7]Seguin's suggestion that the court must engage in the analyses contained in Fitzgerald v. Peek, 636 F.2d 943 (5th Cir. 1981) and Wilson v. Thompson, 593 F.2d 1375 (5th Cir. 1979) is misplaced for the same reasons.  Those cases involve criminal prosecutions brought by states against individuals who were able to show that the actions were instituted as retaliation because the plaintiffs were exercising their constitutional rights.

[7]As discussed below, Seguin's amended complaint, which was filed after the magistrate issued the R&R, alleges the existence of a RICO enterprise within the Rhode Island state court system. Seguin's objection to the R&R is based, in part, on the allegations in her amended complaint, and therefore references

Conduct Comm., 187 F.3d 621, 1998 WL 1085773, at *1 (1st Cir. 1998) ("the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such motive may reasonably be inferred, not merely by generalized asseveration alone") (internal quotation marks and citation omitted). Therefore, Seguin has not alleged that the bad faith exception applies.

Nor has Seguin made "a showing of irreparable harm that is both great and immediate." Esso, 522 F.3d at 143. Seguin has not shown that further review of her federal constitutional claims in the Family Court proceedings or in a petition to the Supreme Court, seeking to invoke that court's appellate or supervisory jurisdiction, would be insufficient to alleviate any injury to her rights, without this court's intervention.

Accordingly, after due consideration of the objection filed, the court approves the R&R of Magistrate Judge McCafferty dated October 24, 2012.[8]  Because Younger applies, abstention is required, and the motion for preliminary injunctive relief is

the allegations of a RICO enterprise.

[8]"'[O]nly those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal.'" School Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1998)).

denied.[9]  See Colonial Life & Acc. Ins. Co. v. Medley, 572 F.3d

22, 25 (1st Cir. 2009) ("If Younger requires abstention, 'there

is no discretion to grant injunctive relief.'") (citation

omitted).


II.  Motion to Dismiss

     The magistrate's R&R addressed Seguin's first motion for a

preliminary injunction which was based on allegations contained

in Seguin's original complaint.  Shortly after the magistrate

issued the R&R, Seguin filed an amended complaint (document no.

28).  The amended complaint added three new defendants:  Peter

Kilmartin, the Attorney General of Rhode Island; Hugh Clements,

the Chief of the Providence Police Department; and Steven

O'Donnell, the Superintendent of the Rhode Island State Police.

The amended complaint also added additional constitutional

claims, allegations of a RICO conspiracy, and details concerning

_____

     [9]Seguin also asserts that Younger abstention does not apply
because Ex Parte Young applies instead.  "The Ex Parte Young
exception simply stated is that the Eleventh Amendment does not
bar a suit for prospective injunctive relief against a named
state official for ongoing federal law violations."  Office of
Child Advocate v. Lindgren, 296 F. Supp. 2d 178, 188 (D.R.I.
2004).  The applicability of Ex Parte Young has no bearing on
whether Younger abstention is required.  See Younger, 401 U.S. at
45.

Seguin's claims.  The defendants move to dismiss the amended complaint.

Seguin also filed three additional complaints:  a second amended complaint ("SAC") (document no. 39), a revised second amended complaint ("RSAC") (document no. 47), and another "second amended complaint" ("third complaint") (document no. 74).  Seguin filed a "motion to amend/correct" the amended complaint on the same day she filed the RSAC, but has otherwise not sought the court's leave to file any of the additional complaints.  The defendants move to strike each of the additional complaints, arguing that Seguin failed to obtain the defendants' consent or leave of the court before filing the SAC, the RSAC, or the third complaint, as required by Federal Rule of Civil Procedure 15(a).

A.   Operative Complaint

"A party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  All other amendments require either the opposing party's written consent or leave of court.  See Fed. R. Civ. P. 15(a)(2).

"Leave to amend is 'freely given when justice so requires,' but courts have discretion to deny such motions under appropriate circumstances, including undue delay and futility." Edlow v. RBW, LLC, 688 F.3d 26, 39 (1st Cir. 2005) (quoting Fed. R. Civ. P. 15(a)). "[D]enial of [a] plaintiff['s] motion [to amend] as futile would be appropriate if the amended complaint still failed to state a claim sufficient to survive a motion to dismiss." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006).

The amended complaint filed on October 26, 2012, is allowed under Rule 15(a)(1). Seguin did not obtain the court's leave to amend her amended complaint before filing either the SAC, the RSAC, or the third complaint. Therefore, the defendants' motions to strike those complaints are granted. See Fed. R. Civ. P. 15(a)(2).

Even if the court were to consider the RSAC as merely a proposed complaint and attached to Seguin's "motion to amend/correct" the amended complaint, as would have been appropriate under the Rhode Island Local Rules, see LR cv 15, the court would still deny the motion as futile. The RSAC adds two additional defendants, Chief Judge Paul Suttell of the Supreme Court, and the Family Court itself. The RSAC adds allegations (I) against Judge Suttell which concern Seguin's attempts to

21

report the alleged illegal activity in the Family Court and Judge Suttell's alleged contribution to that illegal activity in response to Seguin's complaints, (ii) additional details concerning private agreements between state officials and Meyersiek, and (iii) additional details concerning the existence of a RICO enterprise within the Rhode Island state court system. As discussed below, these additional allegations do not change the applicability of <u>Younger</u> abstention, and, therefore, even if the RSAC were the operative complaint, it would still require dismissal.

   B.   <u>Motion to Dismiss</u>

   Seguin's amended complaint asserts the following claims: (1) "Fourteenth Amendment and Article 1 Section 2 of the Rhode Island Constitution (Procedural Due Process Claim)" (Count I); (2) "Substantive Due Process Claim" (Count II); (3) "Immunities and Privileges Claim" (Count III); (4) "Immunities or Privileges Claim of Fourteenth Amendment" (Count IV); (5) "Parental Rights Stemming from the Due Process Right of the Fourteenth Amendment" (Count V); (6) "Fifth Amendment" (Count VI); (7) "Fraud Upon the Court" (Count VII); (8) "Rhode Island General Laws" (Count VIII); (9) "Equal Protection Clause" (Count IX); (10) "42 U.S.C. Section 1982, 1983, 1985(2) and 1985(3)" (Count X); (11) "42 U.S.C.

Section 1986" (Count XI); (12) "First Amendment (Parental Rights Claim)" (Count XII); (13) "Fourth Amendment (Unreasonable Search and Seizure)" (also listed as Count XII); (14) "Ninth Amendment: Interference and Retaliation Against Plaintiff's Exercise of her Right to Report Federal Law Violations by the Defendants" (Count XIII); (15) "First, Ninth and Fourteenth Amendments; Familial Integrity Violation" (Count XIV); (16) "The Supremacy Clause" (Count XV); (17) "Violence Against Women Act" (Count XVI); (18) "Due Process Right to a Fair Tribunal" (Count XVII); (19) "42 U.S.C. Sec. 2000d et seq." (Count XVIII); (20) "Rule Eleven Sanction" (Count XIX); (21) "The Commerce Clause (Article I, Section 8, Clause 3) and the Necessary and Proper Clause (Article I, Section 8, Clause 18)" (Count XX); and (22) "18 U.S.C. Sec. 1964(c) Civil RICO" (Count XXI).  The defendants in the amended complaint are Judge Bedrosian, Judge McCann, Judge Capineri, Judge Forte, Kilmartin, Clements, and O'Donnell.  Seguin seeks various forms of injunctive and declaratory relief, as well as monetary damages against the non-judicial defendants to the extent they are sued in their individual capacity.

### 1.   Younger

The defendants argue that Seguin's complaint requires Younger abstention.  As discussed above, Younger abstention is

"appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal [claim]." Rossi, 489 F.3d at 34-35.

As with Seguin's motion for a preliminary injunction which was the subject of the magistrate's R&R, Seguin's amended complaint seeks to enjoin ongoing Family Court proceedings about the custody of her children, to declare orders issued in those proceedings void, to declare illegal and/or unconstitutional the procedures employed in those proceedings, and to enjoin the Family Court from enforcing its orders.  The relief Seguin seeks would interfere extensively with the ongoing judicial Family Court proceedings.  See Montgomery, 764 F. Supp. 2d at 333.

As for the second factor, as explained above, the state has a strong interest in the issues presented in the Family Court cases, including child custody issues and the procedures employed in Family Court.  See Mann, 22 F.3d at 106.  Further, for the same reasons as discussed in consideration of Seguin's motion for a preliminary injunction, Seguin has not "demonstrate[d] that 'state procedural law barred [the] presentation of'" those claims.  Murphy, 70 F. Supp. 2d at 69 (quoting Pennzoil Co., 481

U.S. at 14).  Nor has Seguin adequately alleged that any exceptions to Younger abstention apply.

Accordingly, Younger abstention applies and, therefore, requires the dismissal of Seguin's claims as to the judicial defendants.[10]  See Bettencourt, 904 F.2d at 785.  Seguin's claims against Clements and O'Donnell apparently stem from their failure to prevent or intercede with the judicial defendants' allegedly unlawful behavior in the Family Court proceedings and Seguin seeks a prospective injunction to halt any future enforcement of orders entered in the Family Court proceedings.  Therefore, Seguin's claims against Clements and O'Donnell are similarly subject to Younger abstention.[11]

---

[10]The allegations in the RSAC against Judge Suttell and those concerning the alleged RICO conspiracy and secret agreements with Meyersiek would not change the applicability of Younger abstention.  Seguin's requested relief would enjoin the ongoing Family Court proceedings and Seguin is not barred from presenting those claims to the Supreme Court.  Any suggestion that Judge Suttell's alleged bias would create an exception to Younger is unavailing for the reasons discussed in the analysis concerning the magistrate's R&R.

[11]Although Clements did not join in the motion to dismiss because of service of process issues, "[t]he fact that the Younger doctrine precludes the exercise of jurisdiction in this action also means that the court should sua sponte dismiss the action" as to Clements.  Lewis v. N. Am. Specialty Ins. Co., 2009 WL 950451, at *3 (S.D. Ohio Apr. 1, 2009) (citing Am. Family Prepaid Legal Corp. v. Columbus Bar Assoc., 498 F.3d 328 (6th Cir. 2007)); see also Reinhardt v. Mass. Dep't of Soc. Servs., 715 F. Supp. 1253, 1259 n.10 (S.D.N.Y. 1989) ("Our decision to

2.   <u>Remaining claim</u>

Seguin seeks the "[a]ward of actual, compensatory, exemplary and incidental damages against the non-judicial defendants brought to this court in their individual capacity."  As discussed above, the non-judicial defendants are Clements, O'Donnell, and Kilmartin.  Kilmartin is the only non-judicial defendant sued in his individual capacity.

Seguin appears to allege that Kilmartin violated various laws by seeking to dismiss her § 1983 claim brought in the Superior Court and, in that action, making various legal arguments that were without merit yet were accepted by the Superior Court when it dismissed the action.  Even if this claim were not subject to <u>Younger</u> abstention, it would still be dismissed because it does not state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).

<u>Conclusion</u>

For the foregoing reasons, Seguin's motion for a preliminary injunction (document no. 5) and motions to vacate the referral order (document nos. 35, 36, and 60) are denied.  The defendants'

---

abstain from exercising jurisdiction over this matter applies equally to all the defendants.  Consequently, we exercise our power to dismiss the complaint as against Joudrey <u>sua sponte</u>.").

motion to dismiss (document no. 62) is granted.  All other
pending motions are terminated as moot.  The clerk of court shall
enter judgment accordingly and close the case.


          SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge
                                    (Sitting by designation.)

December 12, 2012

cc:  Kevin F. McHugh, Esquire
     Rebecca Tedford Partington, Esquire
     Susan E. Urso, Esquire
     Mary Seguin, pro se